No. 21,110.

P. T. FOLEY, *Appellee,* v. T. B. HAM et al., *Appellants*:

SYLLABUS BY THE COURT.

1. CRIMINAL PROSECUTIONS—*In Control of County Attorney.* While the county attorney is not required to take part in a preliminary examination in a felony case unless requested to do so by the magistrate, if he does appear he is entitled to have full charge of the prosecution, and the case should be dismissed if he so directs.

2. SAME—*County Attorney May Dismiss Action.* Where a justice of the peace sitting as an examining magistrate refuses to dismiss a criminal prosecution on the motion of the county attorney, the district court, by an order in the nature of a writ of prohibition, may compel such action.

3. SAME—*Refusal of Justice to Dismiss Action—Writ of Prohibition.* Where a county attorney asks the dismissal of a criminal case pending before a justice of the peace, and his request is denied, no further challenge of the right of the justice to proceed therein is necessary to give a basis for asking relief by prohibition.

4. SAME—*Transcript—Recitals of Justice's Docket—Jurisdiction of District Court.* A transcript of the docket of a justice of the peace, which recites that after a preliminary examination a defendant was required to give bail for his appearance in the district court to answer the charge against him, is sufficient (together with the recognizance given by the defendant) to confer jurisdiction on the district court, although it omits a recital that it was found that an offense had been committed and that there was probable cause to believe the defendant guilty.

5. SAME— *Unwarranted Prosecutions — Injunction.* Injunction against the maintenance of vexatious and unwarranted criminal prosecutions may be allowed against individuals even where no property rights are threatened.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed December 8, 1917. Affirmed.

*Archie D. Neale,* of Chetopa, for the appellants.

*E. L. Burton,* and *George F. Burton,* both of Parsons, for the appellee.

The opinion of the court was delivered by

MASON, J.: P. T. Foley was arrested upon a charge of paying persons to work (and in some instances to vote) for the election of certain candidates for public office, such conduct

constituting a felony under the corrupt practices act. (Gen.,
Stat. 1915, §§ 4342, 4343.) A preliminary examination was
held before a justice of the peace, by whom he was required to
give bond to answer the charge. In the district court the
county attorney asked to be relieved from filing an informa-
tion, for the reason, among others, that there was not sufficient
evidence in his possession to warrant a prosecution. The
court made an order granting the request and the case was
dismissed. The complaining witness then applied to other
justices of the peace to issue a warrant on a complaint charg-
ing the same offenses. Two of them refused to do so, but a
third issued a warrant and held an examination, resulting in
the discharge of the defendant for want of evidence. A sim-
ilar complaint was then filed with another justice of the peace,
Johnson Wade, who issued a warrant upon which Foley was
again arrested. The county attorney filed a written motion
asking, and undertaking to direct, that the case be dismissed.
The justice of the peace overruled the motion. Foley then
brought an action in the district court against the justice of
the peace (Wade), the complaining witness, T. B. Ham, and
his attorney, A. D. Neale, asking that further proceedings be-
fore the justice be forbidden. Issues were joined, evidence
was taken, and judgment was rendered in accordance with the
prayer of the petition. The defendants appeal.

1. So far as concerns the justice of the peace the case
amounts to an application for a writ of prohibition (or for a
judgment or order in the nature of such a writ) forbidding
further proceedings in the criminal case on the ground that
the county attorney had full right to control the matter, and
his direction for a dismissal should have been given effect.
The first inquiry is as to the extent of the power of the county
attorney in that respect. It is said that the public prosecutor,
except as restrained by statute, has absolute control of crim-
inal prosecutions, and has authority in virtue of his office to
enter a *nolle prosequi*—a virtual dismissal—regardless of the
attitude of the court. (32 Cyc. 713; 2 Bishop's New Criminal
Procedure, 2d ed., § 1388; *People, ex rel., v. District Court*, 23
Colo. 466.) The practice in that respect, however, is not uni-
form in the different jurisdictions. (Notes, 35 L. R. A. 701;
45 L. R. A., n. s., 1123.) Our statute recognizes the county

attorney's right under ordinary circumstances to refuse to prosecute, by providing that in extreme cases the court may compel him to file an information. (Gen. Stat. 1915, § 7981.) And his need to exercise discretion in determining whether prosecutions shall be brought is made the ground of exempting him from civil liability for wrongfully instituting them. (*Smith v. Parman,* 101 Kan. 115, 165 Pac. 663.) He is made the representative of the state in litigation "in the several courts" of his county to which it is a party. (Gen. Stat. 1915, § 2620.) He is required to take charge of a preliminary examination in a felony case only when requested to do so by the magistrate. (Gen. Stat. 1915, § 2624.) The statute contemplates that criminal prosecutions may be instituted not only without his participation, but without his knowledge, provision being made for the protection of the public against costs in such cases, except upon his statement that prior consultation with him was impracticable. (Gen. Stat. 1915, § 4753.) Under statutes quite similar to ours it has been held that a court may by mandamus compel a sheriff to serve a warrant in a felony case, notwithstanding the county attorney had instructed him not to do so. (*Beecher v. Anderson,* 45 Mich. 543.) This decision has been cited in support of the doctrine that the county attorney does not have absolute control of a criminal case. (32 Cyc. 714; 23 A. &E. Encycl. of L. 275.) It is based, however, upon the conclusion that in the statute making it his duty to "appear for the state or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications, and motions, whether civil or criminal, in which the state or county may be a party or interested," the phrase "the courts of the county" is intended to refer only to courts of record. In a situation closely analogous to that presented in the Michigan case this court held that the direction of the county attorney was controlling. A warrant charging a felony was placed in the hands of the sheriff. The county attorney directed him to return it and he did so. More than two years later the defendant was arrested upon the same warrant and claimed the benefit of the statute of limitations. The question presented was whether the prosecution was to be regarded as pending between the return of the warrant

already referred to and its reissuance, and this was treated as depending upon the power of the county attorney to control it. This court held that the bar of the statute had fallen, saying:

"The county attorney is the representative of the state in criminal prosecutions, and, subject only to a limited direction by the court, controls such actions. . . . And when the sheriff, by the direction of the county attorney, returns a warrant which has been placed in his hands for service to the court that issued it, this ends the official connection of the sheriff with such warrant, renders the warrant *functus officio,* and effects an abandonment of the prosecution by the state." (*In re Broadhead,* 74 Kan. 401, 405, 86 Pac. 458.)

Notwithstanding that the county attorney is not required to attend a preliminary examination unless asked to do so, we hold that he may appear if he sees fit, and when he does his authority is as complete as though his presence had been requested. The proceeding, while somewhat informal, is an adversary one. It is accusatory or litigious rather than inquisitorial in character. It has something of the aspect of a voluntary investigation conducted by the magistrate, while exercising a function somewhat analogous to that of a grand jury, to determine whether or not there is ground for a prosecution. But under our practice it is quite different from that. It constitutes actual litigation between opposing parties. Testimony taken at such a hearing may be used at the trial in the district court, if the attendance of the witness cannot be had (*The State v. Chadwell,* 94 Kan. 302, 146 Pac. 420; 8 R. C. L. 213, 214), a course which could scarcely be justified if the proceedings were not essentially judicial—a trial between opposing parties presided over by a judge. The state is the plaintiff, and the state's attorney, rather than the complaining witness or any other unofficial person, is entitled to speak in its behalf, and decide upon the course to be pursued in its interest.

"Unquestionably, a private individual has no longer any right to prosecute another for crime,—no right to control any criminal prosecution when once instituted. A criminal prosecution is a state affair, and the control of it is in the public prosecutor. . . . The purpose of a public prosecution is to prevent the use of the criminal law to gratify private malice or accomplish personal gain. This purpose is fully subserved when the control of the case is with the county attorney." (*State v. Wilson,* 24 Kan. 189, 192.)

"The law makes it the duty of the county attorney to conduct criminal prosecutions on behalf of the state, and all steps in the trial are alike

under his supervision and control. (*The State v. Wells*, 54 Kan. 161, 165, 37 Pac. 1005.)

"No one but the county attorney, or the attorney-general on proper occasion, or persons deputized by them, may control prosecutions within a county." (*The State v. Snelling*, 71 Kan. 499, 506, 80 Pac. 966.)

It is true that this interpretation of the law places in the hands of the county attorney a very large power, which is susceptible of abuse. That, however, is a necessary attribute of most governmental powers. In the case of a public officer some protection is afforded by statutes making official misconduct a crime (Gen. Stat. 1915, § 3588), and a basis for ouster (Gen. Stat. 1915, § 7603). The other theory—that the control of a felony prosecution until it reaches the district court, so far as a plaintiff may exercise control, rests with the prosecuting witness, or with any one who is under no official responsibility—would imply that the county attorney might be seriously embarrassed in the attempted enforcement of the criminal law by the interference of individuals, actuated by mistaken judgment or perverse purpose. For instance, a private prosecutor, if in charge of a preliminary examination upon a charge of gambling, might call the keeper of the gaming house and permit him to give such testimony as under the statute (Gen. Stat. 1915, § 3652) would result in his own complete immunity. Clearly the selection of witnesses to be used in that manner should rest with the county attorney, and not with individuals or with the justice of the peace. The power effectively to control a prosecution involves the power to determine when and before what tribunal it shall be brought and maintained, and therefore, whether it should be discontinued. We conclude that the justice of the peace should have acted upon the direction of the county attorney and dismissed the case.

Two federal cases militate somewhat against this conclusion, but they are based upon statutes not entirely like those of Kansas. (*United States v. Schumann*, 2 Abbott [U. S.] 523; *The United States v. Scroggins*, 3 Woods [U. S. Cir. Ct.] 529.)

2. It is contended that even if the justice of the peace ought to have dismissed the case upon the direction of the county attorney, his refusal to do so was a mere error for which prohibition is not an available remedy. It is doubtless true that

Foley v. Ham.

upon the filing of the motion to dismiss the justice did not lose jurisdiction in such sense as to render absolutely void everything that he thereafter did in the case. Prohibition is frequently spoken of as properly invoked only where it is sought to restrain a judicial officer from an act wholly beyond his jurisdiction. But expressions indicating some modification of this are not uncommon. Thus it is said that "the writ will lie in all cases either of abuse or usurpation of jurisdiction by an inferior tribunal" (32 Cyc. 604) ; and that

"Three conditions are necessary to warrant the granting of the relief: first, that the court, officer or person against whom it is sought is about to exercise judicial or quasi-judicial power; second, that the exercise of such power is unauthorized by law; third, that it will result in injury for which no other adequate remedy exists." (High's Extraordinary Legal Remedies, 3d ed., § 764a.)

In practice the writ is often used to prevent an act which in a strict technical sense is within the jurisdiction of the officer, but contrary to law—one which he has the power to perform, but not the legal right. Thus in a recent textbook it is said:

"The doctrine is universally held that a judge who has an interest in the subject matter of the litigation, is disqualified from hearing and adjudging the case, and where he attempts to do so, prohibition will be granted to restrain him." (2 Bailey on Habeas Corpus, § 360.)

(See, also, *State, ex rel. Jones, v. Gay,* 65 Wash. 629.)

Yet the disqualified judge is not wholly without jurisdiction, and if he acts the resulting judgment is not void, nor open to collateral attack. (*Jones v. Insurance Co.,* 85 Kan. 235, 116 Pac. 484.) Merely by way of illustration, it may be mentioned that the writ has been successfully invoked to correct an order requiring the production of records at an unreasonable place (*Equitable Life Assur. Society v. Hardin,* 166 Ky. 51) ; to stay proceedings before a judge who had declared his intention to rule in a particular way (*Cullins v. Williams,* 156 Ky. 57) ; to enforce the rule of *res judicata* (*State, ex rel. Burr et al., v. Whitney et al.,* 66 Fla. 24; *State, ex rel., v. Williams,* 221 Mo. 227) ; to restrain the hearing of a will contest because it was brought too late (*State, ex rel. Wood, v. Superior Court,* 76 Wash. 27; *McVey v. Butcher,* 72 W. Va. 526) ; to prevent the taking of evidence on matters not pertinent to the issue (*Miller v. Superior Court,* 25 Cal. App. 607) ; to prevent the splitting of a cause of action (*Bullard v. Thorpe et als.,* 66 Vt. 599) ; and

even to prevent separate actions upon several notes of the defendant (*James v. Stokes, and als., &c.*, 77 Va. 225).

The district court, besides having general original jurisdiction of all matters not otherwise provided for, and jurisdiction in cases of appeal and error from all inferior courts and tribunals, is specifically given by the statute "a general supervision and control of all such inferior courts and tribunals, to prevent and correct errors and abuses." (Gen. Stat. 1915, § 2957.) The clause quoted can hardly be regarded as referring only to appellate jurisdiction, because that had already been provided for, and because the phrase "to *prevent* . . . errors and abuses" points to a preventive and not a corrective remedy. If it was the duty of the justice of the peace to dismiss the criminal case upon the motion of the county attorney (and we have determined that it was), he acted beyond his legal authority in going ahead with the hearing, and we think prohibition was an appropriate method by which to require him to conform to the direction which we have decided the public prosecutor had a right to give.

It is true the plaintiff in this case might have submitted to the preliminary examination and given bond, if required to do so, for his appearance in the district court, and awaited his discharge upon the refusal of the county attorney to file an information, but that remedy manifestly might have been far from adequate.

3. A suggestion is made that the plaintiff had no right to resort to prohibition because he had not first invoked relief at the hands of the justice of the peace. When the justice had refused to dismiss the prosecution at the instance of the county attorney, a similar request by the accused would obviously have been a mere formality, the futility of which is demonstrated by the defense made in the district court on the ground that the county attorney did not have control of the case. (*State, ex rel., v. Bright*, 224 Mo. 514.)

4. In the first proceeding against Foley the docket of the justice did not recite findings that an offense had been committed and that there was probable cause to believe him guilty, facts that the statute requires to be shown in order to warrant binding him over. This is referred to by the defendants in this action as casting a doubt upon the jurisdiction of the dis-

trict court in that case. The transcript showed that Foley was required to give bond for his appearance in the district court for trial, and this, with the giving of the bond, was sufficient for jurisdictional purposes. (*The State v. Tennison,* 39 Kan. 726, 18 Pac. 948.)

5. The decision that the order against the justice of the peace was properly granted renders of little practical consequence the question whether error was committed in rendering judgment against the individual defendants. As to them the action was one of injunction, and was maintainable for the same reasons that justified the prohibition against the officer, unless by reason of the rule which has sometimes been announced, that injunction against the prosecution of a criminal action will not lie except for the protection of property rights. (22 Cyc. 904; 14 R. C. L. 428.) This rule seems to be founded on these considerations: The accused has usually a fairly adequate remedy by making his defense in the criminal action; a court of equity has no jurisdiction of criminal matters, that subject being committed to courts of law; as a matter of public policy the courts ought not to interfere with the representatives of the public seeking the enforcement of the law. In the case of numerous, repeated and vexatious prosecutions it is evident that the remedy of meeting the charges in the courts where they are brought may not be entirely adequate; where the same court has jurisdiction of legal and equitable matters, distinctions founded on that difference are of little importance; and with respect to an injunction which runs not against the public prosecutor, but against individuals who seek to direct the machinery of the criminal law in opposition to his judgment, the objection based on a reluctance to embarrass officers in discharging their duty to the government does not apply. A court of equity would seem to be as responsive to a call for the protection of personal rights, in an appropriate case, as to one for the protection of rights relating to property. In *Brown v. City of Abilene,* 93 Kan. 737, it was said:

"The remedy of injunction may be employed to protect personal and property rights, although it may operate incidentally to restrain a prosecution under an invalid ordinance." (Syl. ¶ 3.)

The case on its merits was decided upon oral evidence, and any debatable inferences of fact must be resolved in favor of

the plaintiff. So far as the decision turns upon the exercise of discretion, the action of the district court must control. We conclude that no error is shown in any part of the court's order.

The judgment is affirmed.