Beaty v. Wood.

---

No. 24,851.

A. F. BEATY, *Appellee*, v. JOHN T. WOOD, *Appellant*.

### SYLLABUS BY THE COURT.

MALICIOUS PROSECUTION—*Instituted Under "Advice of Counsel"—Erroneous Instruction to Jury.* In an action for malicious prosecution where the "advice of counsel" was relied upon as a defense, the county attorney testified that he would not have authorized the prosecution if he had not thought from his own investigation that it was a good case; also that "There was a question as to whether or not the taking of an automobile from the county was a violation of the law which says you can't take mortgaged property out of the county—I wanted a decision on that," the court instructed the jury that, "If you should believe from the evidence that the county attorney and the defendant brought the prosecution for the purpose of testing the law, or having a decision thereon in regard to secreting or moving automobiles out of the county which were mortgaged, then, and in that event, if you so find, the advice of the county attorney would not protect the defendant; in other words, advice for that purpose would not be adequate or legal and proper to cause the defendant to bring the prosecution," *held,* error.

Appeal from Allen district court; SHELBY C. BROWN, judge *pro tem.* Opinion filed January 12, 1924. Reversed.

*A. F. Florence,* of Iola, for the appellant.
*F. J. Oyler, W. H. Anderson,* and *G. M. Lamer,* all of Iola, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for malicious prosecution. The plaintiff recovered and defendant appeals.

The defendant sold plaintiff a Hupmobile in the early part of 1920, taking plaintiff's note and chattel mortgage on the car for $390. Sometime later, on his failure to make payments, the plaintiff surrendered possession of the car. On June 8, 1920, he made a payment of $100 and again secured possession of the car. Sometime in July following, without informing the defendant of his intentions, plaintiff, in company with his wife, left Iola in the car. The defendant made inquiry concerning the plaintiff's whereabouts, but was unable to locate him. He then consulted a firm of reputable attorneys who, after investigation, advised him to lay the matter before the county attorney. The defendant did so. After investigation by the county attorney, a complaint was filed, warrant issued, and plaintiff arrested in Illinois and returned to Iola.

The pertinent part of the General Statutes of 1915, § 6513, under which the complaint was filed, reads:

"That any mortgagor of personal property, or any other person who shall injure, destroy, or conceal any mortgaged property, or any part thereof, with intent to defraud the mortgagee, his executors, administrators, personal representatives, or assigns, or shall sell or dispose of the same without the written consent of the mortgagee, . . . shall be guilty of larceny," etc.

A preliminary hearing was had before a justice of the peace, the justice finding that an offense had been committed, and that there were reasonable grounds for believing that the defendant (plaintiff here) was guilty of the offense charged. The plaintiff was afterwards released by the district court on a writ of habeas corpus and brought this action and recovered a verdict of $500 against the defendant, on which verdict the district court pronounced judgment and from which judgment the defendant appeals.

It is contended by the plaintiff that the defendant did not state all the facts to the county attorney and that the county attorney brought the action as a test case for which the defendant is chargeable.

The evidence showed that the defendant took the chattel mortgage to his attorneys; that they examined the papers and conducted an investigation to ascertain plaintiff's whereabouts; that they instructed the defendant to find out if the plaintiff could be located;

that the defendant made inquiry of the relatives of plaintiff, and others, concerning the whereabouts of plaintiff, but was unable to learn where he had gone, and so reported to his attorneys. He was then advised by them to lay the matter before the county attorney. He stated the essential facts to the county attorney, submitting to him the chattel mortgage and note. The county attorney began an investigation to learn the whereabouts of the plaintiff but was unable to do so. Among other things he testified:

"Mr. Wood came to my office and told me that Mr. Beaty had gone, and that he did not know where he had gone, and he did not know where he was. And as I remember, he said he was unable to find out where he was, the first time he came. I told him I would investigate it, and I think he said he would come back, and he did come back in about a week's time, or it might have been two or three days. There was a question as to whether or not the taking an automobile from the county was a violation of the law which says you can't take mortgaged property out of the county. I wanted a decision on that, and I told Mr. Wood I would O. K. the county paying the cost, and authorize the justice to issue the warrant."

"Q. So that after you had fully investigated the matter, Mr. Brown, you told Mr. Wood that you would authorize the issuing of the warrant? A. I don't know as I had fully investigated it. I talked to some of Mr. Beaty's relatives.

"Q. Was that conversation a conversation of inquiry as to where he was? A. Yes, sir; I inquired where he was.

"Q. What information did you obtain as to his whereabouts in that conversation? A. I did not find out where Mr. Beaty was. At the time I was unable to find out.

"Q. Mr. Wood came to your office and insisted on bringing that as a criminal action, did he? A. No, I don't think John insisted so very much. I told him to go and see the neighbors up there, and see the landlady and everybody he could and try to locate him, and he came back and reported that he was unable to locate him. My own investigation bore that out.

"Q. Mr. Wood reported to you that he had made investigation and he could not locate the whereabouts of Mr. Beaty? A. Yes, sir.

"Q. And it was on that statement of his that you were willing that a case should be filed? A. Together with my own investigation, I did some investigating myself.

"Q. What was the reason that you O. K.'d the issuing of the warrant and the filing of the complaint as far as the costs were concerned to the county? A. That and the investigation. If I had not thought from my investigation that it was a good case, I would not have authorized the payment of the cost by the county."

One of the defendant's attorneys, among other things, testified:

"I advised him (defendant) to go to the county attorney and have him (plaintiff) arrested and I think he did right away."

The other of defendant's attorneys, among other things, testified:

"I tried to locate Mr. Beaty. I called up some of his relatives. I think they were out in the country or the remote part of town, and they did not know where he was . . . . We advised him (defendant) to go to the county attorney and procure a warrant, and he went to the county attorney and procured a warrant. It was through another person, indirectly, that I learned where he was. I gave considerable time to this personally and learned where Mr. Beaty was but did not learn where the car was."

Another witness, a creditor of the plaintiff, who was endeavoring to find the plaintiff, stated that it took quite a while, two or three weeks to locate him.

Specific complaint is made of the 6th instruction given by the trial court, which reads:

"You are further instructed that if you should believe from the evidence that the county attorney and the defendant brought the prosecution for the purpose of testing the law, or having a decision thereon in regard to secreting or moving automobiles out of the county which were mortgaged, then and in that event, if you so find, the advice of the county attorney, would not protect the defendant; in other words, advice for that purpose would not be adequate or legal and proper to cause the defendant to bring the prosecution."

The instruction was so worded as naturally to mislead the jury. It singled out and emphasized a statement of the county attorney with which the defendant had nothing to do and over which he had no control. It criticized the county attorney's purpose as being improper and illegal and charged the defendant with being responsible therefor. The defendant was not chargeable with the county attorney's doubt of what the law was. If the county attorney made a mistake in that regard it was the mistake of the state and one for which the defendant should not suffer. While it is contended that the defendant failed to disclose all the facts, attention is not directed to any omitted fact which would have been material. Just when it was first learned that the defendant had gone to Missouri or Illinois is not disclosed. It is quite apparent that the defendant did not know at the time he first consulted the county attorney. The county attorney testified that his investigation bore out the statement of the defendant and that he would not have approved the prosecution had he not thought from his own investigation that there was a good case.

The question of "the advice of counsel as defense to an action for malicious prosecution" was given careful consideration by this court

*Beaty v. Wood.*

in *Haynes v. Railway Company,* 108 Kan. 360, 195 Pac. 592, Mr. Justice Dawson, in a specially concurring opinion, stated:

"In our time, criminal proceedings are so largely under the control of official public prosecutors (*Foley v. Ham,* 102 Kan. 66, 169 Pac. 183), that the old rule as to the liability of the prosecuting witness does not fit into the circumstances where a prosecution is undertaken with the sanction of the county attorney or under his direction." (p. 370.)

Mr. Justice Burch, in a specially concurring opinion (p. 371), quotes, with approval, from *Schippel v. Norton,* 38 Kan. 567, 16 Pac. 804:

"We think it is a good defense to an action for malicious prosecution, that the defendant, before commencing the alleged malicious prosecution, it being a criminal prosecution, presented the matter to the county attorney, fairly stating to him all the facts, and then in good faith followed the advice of the county attorney. Such a thing completely rebuts the allegation of the plaintiff that there was a want of probable cause for commencing the prosecution, and it, of itself, shows probable cause." (p. 570.)

He also quotes from *Laughlin v. Clawson,* 27 Pa. St. 328, as follows:

"If the officers of the state, who are appointed on account of their legal learning, consider that a given state of facts is sufficient evidence of probable cause, how can the private citizen be said to be in fault in acting upon such facts, and how can the state condemn him to damages for so doing? To decide so is to use the machinery of government as a trap to ensnare those who trust in government for such matters, and who ought to trust in it. If such officers make a mistake, it is an error of government itself, and government cannot allow the citizen to suffer for his trust in its proper functionaries." (p. 330.)

Also from *King v. Apple River Power Co.,* 131 Wis. 575, as follows:

"The real basis for the doctrine that the advice of counsel under the circumstances stated stands for probable cause is that it covers the subject of whether the statement made is sufficient without further investigation as to the facts. Counsel is supposed to pass upon that question, and his advice honestly given and honestly acted upon to preclude any successful claims of negligence or imprudence on the part of the prosecutor . . ." (p. 583.)

It is for the best interests of society that law violators be promptly punished and that a citizen who has good reason to believe the law has been violated shall have the right to cause the arrest of the offender. In order that he may be protected in so doing, it is a well established rule that if he have reasonable grounds for his belief, and act thereon in good faith in causing the arrest he shall not be

subject to damages merely because the accused is not convicted. The rule is grounded upon public policy in order to encourage the exposure of crime. (See 26 Cyc. 7, 8, 19 A. & E. Enc. of L. 630, 653; Note in 26 Am. St. Rep. 127 *et seq.; Michael v. Watson,* 81 Kan. 360, 105 Pac. 537; Note, L. R. A. 1915-D 1 *et seq.; Smith v. Federal Rubber Co.,* 170 Wis. 497; *Topolewski v. Plankinton Packing Co.,* 143 Wis. 52; *Beihofer v. Loeffert et al.,* 159 Pa. St. 374; cases cited in *Haynes v. Railway Co.,* supra.)

The judgment is reversed and a new trial ordered.