No. 31,324

AL F. WILLIAMS, *Appellee,* v. M. W. CAVE (Revived in the Name of LOUISE L. CAVE, Administratrix, etc.), *Appellant.* ·

(27 P. 2d 272.)

Opinion filed December 9, 1933.

*Nelson J. Ward, Thomas F. Doran, Clayton E. Kline, Harry W. Colmery* and *M. F. Cosgrove,* all of Topeka, for the appellant.

*Frank H. McFarland,* of Topeka, and *Don H. Elleman,* of Columbus, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Al F. Williams, attorney, against M. W. Cave, to recover for his services as an attorney rendered in a prosecution against Cave, brought in the federal court of Colorado, under an employment by Cave. The plaintiff recovered a judgment for $6,000, and defendant appeals.

After the appeal was perfected M. W. Cave died, and the proceedings were revived in the name of Louise L. Cave, the duly appointed administratrix of his estate.

The main contention of the defendant is that the employment of Williams and the services rendered by him were contrary to public policy, and that by reason thereof Williams is not entitled to recover anything.

The plaintiff's petition relates that Williams is a lawyer and has been engaged in the continuous practice of the law in this region

for about thirty-four years. During that time, and in 1921, he was appointed United States district attorney for Kansas, and occupied that position for a period of about nine years, and has had a large practice in the federal courts in both civil and criminal cases. Cave, the defendant, was the president of the Bankers Mortgage Company, a corporation having resources in excess of $3,000,000, doing business in Kansas, Colorado and other states, and that he was drawing a salary of $18,000 and receiving dividends and profits approximating $30,000 per year. It is alleged that Cave and other officers of the Bankers Mortgage Company were indicted by the United States grand jury sitting in Denver, Colo. They were charged with using the United States mails in furtherance of a scheme to defraud certain named individuals. After the arrest of Cave and his fellow officers, they gave bond for their appearance for trial and employed attorneys other than the plaintiff to defend and protect them in the prosecution. Cave desired a personal attorney to represent him, separate and apart from other attorneys, and employed the plaintiff on May 29, 1930, with no agreement as to fees and charges for plaintiff's services. Plaintiff immediately began work on the case, giving it much time and study examining pleadings, documents and acquainting himself with the facts of the case, holding conferences with his client and other attorneys until the case was finally disposed of. In that capacity he made two trips to Colorado, two to Chicago, Ill., and also two trips to Washington, D. C., where conferences were held with the United States district attorney of Colorado, and his assistants, with the chief and subordinate inspectors of the post-office department. Some of the conferences were held to demonstrate to the prosecuting officers that Cave was innocent of the offense charged against him, and that a prosecution of him was not justified or could succeed. As a result of the efforts mentioned, it is alleged that the United States district attorney for Colorado and the post-office inspection department finally joined in a request to the attorney-general of the United States to authorize the dismissal of the prosecution. That authority was given several months later, and on the motion of the prosecution the United States district court dismissed the prosecution and released the bonds given by the defendant, and no further action has been taken in the matter. At the conclusion the plaintiff demanded a fee of $10,000 for his services, which is alleged to be a reasonable fee, on which Cave had paid but $1,500 and had refused to pay the balance.

The defendant filed an answer admitting the employment of plaintiff as his personal attorney, and further that as the result of the services of plaintiff and other attorneys the case was dismissed as alleged and defendant was cleared of the charges against him. All allegations of the plaintiff, except what was expressly admitted, were denied. Then he added that he had an agreement with plaintiff that the fee for the services of plaintiff should be $2,500, of which he had paid $1,500, and further alleged that the amount due plaintiff was $1,000, which he stated he had tendered to plaintiff and stood ready to pay the same, and offered to allow judgment against him for that amount.

A trial was had with a jury and, as we have seen, a verdict was returned in favor of the plaintiff awarding him $6,000, for which judgment was rendered.

Errors are assigned for overruling motions of defendant for judgment on the opening statement of plaintiff, for overruling the demurrer to plaintiff's evidence, for denying judgment for defendant notwithstanding the verdict, and for overruling a motion for a new trial. The motion for judgment on the opening statement is not seriously pressed and is without merit.

All the other complaints center on and revolve around the contention that the services performed by plaintiff, or a part of them, were for securing the dismissal of the prosecution, and that such service is contrary to public policy and does not warrant a recovery. Counsel for defendant states that: "We do not suggest for one minute that appellee was in any way guilty of corruption according to the ordinary definition of that term," but they do claim that the dismissal of a prosecution on an indictment found has an evil tendency and should be declared void even if the attorney employed believed the person to be innocent or that a prosecution must necessarily fail for lack of evidence.

Defendant calls attention to many authorities to the effect that a contract to influence the action of a grand jury, to prevent indictments, to stifle the investigation of a crime committed or to prevent the orderly inquiry into the alleged commission of a public offense, are void, and that the law frowns on any attempt to suppress investigation and that a recovery should not be had on such undertakings, citing 6 R. C. L. 758, *Weber v. Shay*, 37 L. R. A. 230, and other similar authorities. There was no contract that plaintiff was to use his personal or political influence with the officers to

prevent investigation of the offense charged, or to do anything outside of his professional duty and function as an attorney for the defense of the defendant. If an agreement had been made stipulating for secret and improper tampering with official action, as in this case, with the department of justice or any member of it, which would have a tendency to mislead or corrupt the officers, it would have come within the authorities mentioned and within the contemplation of the law, and necessarily would be declared void. There is nothing, however, in the evidence showing that the employment of plaintiff, either in terms or by implication, contemplated that plaintiff was to use personal or political influence to defeat the prosecution or prevent a full investigation of the charge by prosecuting officers. There were conferences with officers, including a final one with the United States attorney-general at Washington, where a hearing, quite public in character, was had, there being present the United States district attorney for Colorado, the post-office inspector, three assistant attorneys-general, as well as counsel representing the defendant. There the whole matter relating to whether, under the facts, a prosecution was justified, and whether or not it should be discontinued, was discussed and considered. The hearing and discussion before the attorney-general lasted, it appears, about two hours, and instead of being a secret one, it was open and was participated in by the representatives and investigators of the United States, as well as the representatives of Cave and other attorneys for the defense. It was almost as public and formal as a hearing before a court.

The employment was a general one to defend and care for the rights of the defendant in the prosecution. There was no mention made of methods, procedure or compensation. The plaintiff proceeded to inquire into the facts involved and to prepare for the defense. In his investigation he determined that the facts did not warrant the prosecution, and his views were presented to the prosecuting officer. After conference with these officers, the whole matter was brought up for the consideration of the attorney-general of the United States and his assistants, where a full inquisition and hearing was had by the representatives of the accused and the accusers in January, 1931. No decision was then reached, but it was kept open for investigation and consideration until April, 1931, when a decision was rendered by the attorney-general directing that the

prosecution should be dismissed, and a judgment of dismissal was accordingly rendered.

The action of the plaintiff in presenting the matter to the attorney-general was not immoral or contrary to public policy, unless the order of dismissal directed by the attorney-general was itself beyond the power of the attorney-general and unwarranted. It cannot be and is not contended that the attorney-general was deceived by the presentation, nor that he was unduly influenced by the representatives of the plaintiff. Nor is it open to controversy that the attorney-general has power to direct the dismissal of prosecutions which, upon investigation of the facts, convinces him that a continuance of the same is not warranted.

In regard to a dismissal or a *nolle prosequi* by the attorney-general, or chief prosecuting officer, it was said by Chief Justice Shaw in *Commonwealth v. Tuck*, 20 Pick. 356:

"There are three periods of the prosecution in which a *nolle prosequi* may be entered—before a jury is empanelled, while the case is before the jury, and after verdict. In the first it is perfectly clear that a *nolle prosequi* may be entered at the pleasure of the prosecuting officer. Such is the constant practice. It may be that the indictment is defective and he may wish to procure another. He may discover that the evidence will turn out different from what he expected, and he may wish to vary the charge to make it conform to the proof, or he may have good reasons for not wishing to prosecute at all. There may be innumerable causes for discontinuing the prosecution, of all of which he must judge upon his official responsibility. In many cases the discontinuance may operate to the prejudice of the defendant, but never to the injury of his legal rights. It is not to be presumed that this officer will violate his duty or act oppressively." (p. 365.)

In this state it has been held that the prosecuting officer has supervisory power and control in the prosecution of criminal cases, and that control "involves the power to determine when and before what tribunal it shall be brought and maintained, and therefore whether it should be discontinued." (*Foley v. Ham*, 102 Kan. 66, 169 Pac. 183.)

In *State v. Finch*, 128 Kan. 665, 280 Pac. 910, a controversy arose as to the control of a prosecution by the attorney-general of the state, and it was determined that as he was the head of the department he had authority to dismiss a case notwithstanding a contention to the contrary by the county attorney. Being the chief law officer of the state, he is entitled both under the common law and the statute to make any disposition of the state's litigation that he deems for its best interests and may abandon, discontinue or dismiss it.

In *State v. Zier,* 138 Kan. 235, 25 P. 2d 583, the Foley and Finch cases were approved and followed.

The attorney-general is the head of the department of justice and has full control of prosecutions in criminal cases. There is a rule of the department pertaining to dismissing criminal cases that—

"No dismissal of any case shall be made by you until after you transmit application for authority to this department and have received from this department such authority. In cases of exigency where it is deemed necessary to dismiss immediately a prosecution or any count in an indictment, and there is not opportunity to obtain authority from the department, proper report should be made promptly to this department of the action taken and the reasons therefor." (Instructions to United States District Attorneys, October 1, 1929, p. 194, ¶ 1137.)

In the exercise of this control and upon the evidence furnished by the investigators and others, the direction was given. It not infrequently happens that prosecutions are instituted on limited or incorrect information, and upon closer investigation of the facts it is found that the prosecution is not justified and that it cannot be successfully maintained. In such cases the attorney-general has the power and it would be his duty to discontinue the prosecution. There is nothing to impeach the good faith of the action taken by him in the present case. He having acted within his authority and in consonance with his judgment of the facts, it cannot be held that the direction was not properly made.

The plaintiff, in calling the attention of the attorney-general to the facts and in aiding to present them to the attorney-general, cannot under the evidence be held to have tampered with official action, to have stifled investigation or exerted undue influence upon the attorney-general which would defeat a recovery for compensation under the employment. In support of our views we cite: *Houlton v. Nichol,* 93 Wis. 393; *Rogers v. Hill,* 22 R. I. 496; Annotation on the subject in 46 A. L. R. 201, 214, and numerous other cases there cited.

The judgment is affirmed.

HUTCHISON, J., not sitting.