NOT DESIGNATED FOR PUBLICATION

No. 116,806

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JONATHAN DIAZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed January 19, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.


PER CURIAM: The district court denied Jonathan Diaz' motion for post-sentencing relief, which was originally filed as a K.S.A. 60-1507 motion, but was construed by the district court as a motion to withdraw plea. Diaz now contends his counsel in the district court was ineffective and he was coerced into confessing and entering his pleas. We see no error in the district court's denial.

1

FACTS AND PROCEDURAL BACKGROUND

Beginning in April 2013, several female inmates at the Reno County jail alleged that correctional officer Jonathan Diaz asked them to expose themselves, fondle themselves, and engage in sexual contact with other inmates so he could watch. Two inmates said Diaz threatened to kill them if they said anything. Police interviewed Diaz and he admitted to engaging in sexual contact with one inmate and watching another inmate fondle herself, but he denied threatening them. Diaz was charged with two counts of unlawful sexual relations, two counts of aggravated intimidation of a victim or witness, and two counts of bribery. The State later amended the complaint to add an additional charge of unlawful sexual relations after another inmate came forward.

On September 11, 2013, Diaz waived his preliminary hearing, pled no contest to the two counts of aggravated intimidation of a victim, and pled guilty to all other charges. Before entering his plea, Diaz told the district magistrate judge that he had adequate time to discuss the case with his attorney and he understood the guilty pleas would mean he was admitting the charges were true, while the no contest pleas also would result in convictions if the State presented a sufficient factual basis for them. Diaz represented to the court that he had neither been threatened in any way nor promised anything to get him to change his pleas. The court accepted Diaz' pleas and set a date for sentencing.

The district court sentenced Diaz to 64 months in prison. Diaz appealed, but on October 30, 2014, the Kansas Supreme Court summarily dismissed the appeal after finding no error in the sentences imposed by the district court. On May 8, 2015, Diaz filed a pro se motion for relief under K.S.A. 60-1507. He alleged his attorney in the district court proceedings provided ineffective assistance, his pleas were taken in violation of his rights, and his confession was illegally obtained.

Diaz was the only witness at the evidentiary hearing on his motion on March 28, 2016. He began his testimony by saying he told his attorney, Blake Cooper, that his confession was invalid. Contrary to one of the claims in his motion, Diaz testified the officers did advise him of his *Miranda* rights, but he added "the detectives were wearing their weapons and it was very intimidating," leaving him with the feeling he could not leave the interview at any time. He stated he was coerced into making an untrue statement and was not given anything to drink or any bathroom breaks during the period of the interview, which he estimated to have been over two hours. Diaz testified he told Cooper he wanted to explore suppressing his confession but Cooper did not file a motion to suppress.

As further support for the allegation that Cooper provided ineffective counsel, Diaz testified he told Cooper there were multiple people who could testify about his character and his lack of opportunity to commit the crimes because of the size and layout of the jail and the number of other people working there. Diaz said as far as he knew Cooper never spoke with any of these potential witnesses.

Finally, Diaz testified the State coerced him into entering his pleas through a threat to dismiss the case as it was then framed, then refile the charges as separate cases. The effect would have been to expose Diaz to the potential for a significantly higher total sentence because of the impact of the multiple separate convictions on his criminal history score.

During cross-examination, Diaz testified he was a graduate of the Kansas Law Enforcement Training Center and served as a Reno County sheriff's deputy for about two years. He acknowledged receiving firearms training, carrying a firearm throughout his time as a deputy, and being at least somewhat comfortable around firearms since his coworkers also carried weapons. Diaz also admitted he had been aware there were video

recordings to corroborate the statements of several women, showing him going to the cells at the times alleged.

In its analysis, the district court construed Diaz' motion as a motion to withdraw a plea and applied the factors listed in *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006), to Diaz' claims. The factors assess whether "'(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" 281 Kan. at 36. The district court addressed each and found Cooper was not ineffective, the State's threat to refile the charges in multiple complaints to expose Diaz to a higher sentence was not coercive, and Diaz' pleas were fairly and understandingly made. Based on those findings, the district court denied the motion, holding that Diaz failed to establish manifest injustice. Diaz appeals the denial.

ANALYSIS

In his arguments, Diaz accepts the district court's reframing of his original 60-1507 motion as a motion to withdraw plea. His argument stems from his testimony—which is not disputed by the State—that the prosecutor told him he could plead to the five person and two nonperson felonies as charged or the charges would be dismissed and refiled as separate cases, substantially increasing his potential controlling sentence. Diaz contends the district court's principal error was finding that tactic was within the scope of the State's prosecutorial discretion because its use impacted all three *Edgar* factors and "it effectively operated to deprive [him] of his right to effective counsel and to investigate and attempt to present a defense."

*Standard of review*

We review the denial of a postsentencing motion to withdraw a plea for abuse of discretion. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

A district court may permit a defendant to withdraw a plea after sentencing in order to correct manifest injustice. K.S.A. 2016 Supp. 22-3210(d)(2). When evaluating a defendant's showing of manifest injustice, Kansas courts consider at least the three "*Edgar* factors" we noted above. Those factors "are 'viable benchmarks for judicial discretion,'" but the Kansas Supreme Court has "made clear they should not be relied on to the 'exclusion of other factors.'" *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011) (quoting *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 [2010]).

To the extent an element of Diaz' motion to withdraw plea is a claim of ineffective assistance of counsel, it must meet the test derived from *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). *Bricker*, 292 Kan. at 245-46. This requires Diaz to show (1) that Cooper's performance fell below the objective standard of reasonableness and (2) that but for Cooper's errors, there is a reasonable probability that the result of the proceeding would have been different. 292 Kan. at 245-46.

*Representation by competent counsel*

Diaz presents two bases for his ineffective assistance of counsel argument. The first is Cooper's failure to suppress his confession based on the assertion that "the detectives were wearing their weapons and it was very intimidating." This is not an

5

adequate basis upon which to suppress a confession. See *State v. Snodgrass*, 252 Kan. 253, 258-59, 843 P.2d 720 (1992) (rejecting defendant's argument that he was coerced into confessing simply because he was arrested at gunpoint when there was no evidence that the police used their weapons inappropriately). If it were, every confession obtained by an armed detective or police officer could be suppressed. Diaz' claim also lacks credibility because of his former employment as a gun-carrying deputy sheriff working daily in a law enforcement environment. He is not in a strong position to contend he was shocked and unsettled because those who questioned him wore weapons.

The assertion that Diaz was improperly questioned because he was not offered food, drink, or a restroom break in approximately two hours is also unconvincing. Diaz does not assert he even asked for any of those allowances and the duration of the questioning was comparatively short.

The other basis for the ineffective assistance of counsel claim is Cooper's failure to investigate the witnesses Diaz said could exonerate him. Diaz claims these witnesses could have testified about how he lacked the opportunity to commit the crimes because of his schedule and the layout of the jail. Diaz admitted in the district court, however, that he was aware of the corroborative video recording of him going to the cells of the inmates at the times the inmates alleged he was there. He does not explain how Cooper could have used the witnesses to effectively build a lack of opportunity defense when contradictory video footage established his opportunity to commit the crimes.

We see nothing in Cooper's actions, especially prior to preliminary hearing, that supports Diaz' contention that Cooper's representation was objectively unreasonable. Diaz also fails on the second part of the *Strickland* test. Even if we were to find Cooper should have spoken with the witnesses early in the case, the combination of Diaz' confession, the victims' allegations, and the corroborating jail video made a strong case for the State. We find no reasonable probability that the result of the proceeding would

6

have been different had Cooper approached the case as Diaz contends he should. Diaz falls short of showing manifest injustice under the first *Edgar* factor.

*Coercion*

Diaz cites coercion by the State as the overarching reason manifest injustice requires withdrawal of his pleas. The fact the prosecutor threatened to dismiss the charges against Diaz and refile them in separate complaints is undisputed. There is also no question that the resulting criminal history scoring would have greatly increased the potential prison sentence for Diaz. The dispute is whether that was a valid exercise of prosecutorial discretion or was so coercive that Diaz should be permitted to withdraw his pleas.

The primary determinants for the length of a sentence under the revised Kansas Sentencing Guidelines Act are an offender's criminal history and the severity level of the crime of conviction. K.S.A. 2016 Supp. 21-6804. Diaz' criminal history at the time of his plea placed him in the lowest category, I. When Diaz was sentenced, a conviction for unlawful sexual relations with a criminal history score of I resulted in a presumptive sentencing range of 31-34 months in prison, with 32 months as the standard sentence. K.S.A. 2016 Supp. 21-6804. Diaz received that standard 32-month sentence for each of his unlawful sexual relations convictions and all sentences were ordered to be served consecutively, but the controlling sentence was capped at 64 months pursuant to the rule in K.S.A. 2016 Supp. 21-6819(b)(4) ("total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence").

If the prosecutor had filed the charges against Diaz in separate complaints, the double rule would not have applied and he would have faced a sentence much longer than 64 months. For example, if the prosecutor obtained a conviction for the first count of

unlawful sexual relations, a severity level 5 person felony, Diaz would face a presumptive standard sentence of 32 months and his criminal history score for further convictions would increase to D. K.S.A. 2016 Supp. 21-6804. If there were then a conviction for another charge of unlawful sexual relations, Diaz would face a presumptive standard sentence of 52 months and his criminal history score would increase again, to category B. A conviction for the third count of unlawful sexual relations would result in a presumptive standard sentence of 120 months and Diaz' criminal history score would increase to A. With a criminal history score of A, convictions for the remaining four counts—two counts of aggravated intimidation of a witness, severity level 6 person felonies, and two counts of bribery, severity level 7 nonperson felonies—would yield standard presumptive sentences totaling 150 months. Adding the 150 months to the presumptive sentences for unlawful sexual relations results in a potential 354 months in prison if all sentences were ordered to be consecutive.

Approached differently, if the prosecutor gained convictions for the three counts of unlawful sexual relations after Diaz' criminal history score was increased to B by convictions for the other two person felonies, followed by convictions for the nonperson bribery charges, the total of the presumptive standard sentences for the unlawful sexual relations convictions would be 380 months in prison, plus almost 10 years for the other convictions. Diaz argues that he was pressured into abandoning his not guilty pleas because of the staggering difference in the possible consequences if the charges were reconfigured. Either he could change to guilty and no contest pleas before he had the benefit of a preliminary hearing and a full investigation of his case, or he could maintain his not guilty pleas, make the State prove the charges, and risk facing what could very well be the rest of his life in prison.

In Kansas, the authority to make decisions about charging crimes or dismissing charges rests with the county and district attorneys.

"A county attorney or district attorney is the representative of the State in criminal prosecutions. As such, he or she controls criminal prosecutions. It is the county or district attorney who has the authority to dismiss any charge or to reduce any charge. *State v. Turner,* 223 Kan. 707, 709, 576 P.2d 644 (1978). The prosecuting attorney has broad discretion in discharging his or her duty. The scope of this discretion extends to the power to investigate and to determine who shall be prosecuted and what crimes shall be charged. *State v. Dedman,* 230 Kan. 793, 798, 640 P.2d 1266 (1982); *State v. Blount,* 13 Kan. App. 2d 347, 351, 770 P.2d 852, *rev. denied* 245 Kan. 786 (1989). The prosecuting attorney has discretion to dismiss charges, and the court cannot refuse to allow a dismissal. *Foley v. Ham,* 102 Kan. 66, 67-72, 169 Pac. 183 (1917). Similarly, the court cannot restrain a prosecutor from prosecuting an action. *State, ex rel., v. Rohleder,* 208 Kan. 193, 195, 490 P.2d 374 (1971)." *State v. Williamson*, 253 Kan. 163, 165-66, 853 P.2d 56 (1993).

In response to Diaz' vindictiveness argument, the State relies on K.S.A. 2016 Supp. 21-6812, which lists the permitted and prohibited acts available to a prosecutor in plea discussions with a defendant. As the State notes, the scope of permitted acts includes a catch-all provision allowing a prosecutor to "make any other promise to the defendant," except for two specified promises that are expressly prohibited. K.S.A. 2016 Supp. 21-6812(f).

The Kansas Supreme Court relied on a United States Supreme Court case in rejecting a claim of prosecutorial vindictiveness in *State v. Smallwood*, 264 Kan. 69, 77-78, 955 P.2d 1209 (1998):

"With respect to Smallwood's claim of prosecutorial vindictiveness, in *Bordenkircher v. Hayes,* 434 U.S. 357, [98 S. Ct. 663, 54 L. Ed. 2d 604] (1978), the United States Supreme Court faced a similar claim. After Hayes refused to plead guilty to a felony indictment for uttering a forged instrument, the state prosecutor reindicted the defendant, charging him under the habitual criminal statute and thereby subjecting him to a greater penalty. Hayes was convicted and received the greater penalty. After the state appellate courts affirmed the sentence, the defendant filed a writ of habeas corpus in the

9

federal district court. It was denied. On appeal, the federal Court of Appeals found prosecutorial vindictiveness had occurred and reversed.

"After granting *certiorari,* the Supreme Court, in reversing the Court of Appeals, found that the defendant's due process rights were not violated when the prosecutor carried out the threat to reindict the defendant on more serious charges. The Court found it immaterial that the prosecutor was in possession of the evidence justifying the more serious charge at the time of the original indictment and that the defendant's refusal to plead guilty was what led to his second indictment. The prosecutor's conduct did no more than openly present the defendant with the alternative of foregoing trial or facing charges on which he was plainly subject to prosecution. It concluded that there is no violation of due process rights where the State prosecutor, during plea negotiations, threatened to reindict the defendant on more serious charges if he did not plead guilty. 434 U.S. at 365. See *United States v. Frederick,* 551 F. Supp. 1035 (D. Kan. 1982)."

In *Smallwood*, the State threatened to "reindict [Aaron Smallwood] on a more serious charge (felony murder) if he refused to plead guilty to second-degree murder." 264 Kan. at 78. Citing similarity to *Bordenkircher*, the Kansas Supreme Court rejected Smallwood's claim of prosecutorial vindictiveness because the "charge was one for which Smallwood was plainly subject to prosecution." 264 Kan. at 78.

Unquestionably, Diaz was faced with a stark choice and prosecutors should be mindful of their obligation not to abuse the extraordinary—but not unlimited—authority vested in them. As representatives of the State, with the accompanying power and resources, prosecutors must always be mindful that their role is "the responsibility of a minister of justice and not simply that of an advocate." Supreme Court Rule 226, KRPC 3.8, cmt. 1 (2017 Kan. S. Ct. R. 351). Threatening a disproportionately harsh sentence through manipulation of the sentencing guidelines is a tactic that could be used to gain pleas in cases where the evidence is weak and the prospect for conviction at a trial is questionable. As we have noted, from the record here the State's threatened restructuring of the charges does not appear to have been an attempt to avoid taking a dubious case to

trial and, as in *Smallwood*, the charges against Diaz were ones for which he was "plainly subject to prosecution." On these facts, we find no violation of the second *Edgar* factor.

*Plea fairly and understandingly made*

Diaz challenges the fairness of his plea only in the context of the issues we have already discussed. Before he entered his pleas, Diaz answered questions from the district magistrate about his understanding of the purpose of a preliminary hearing and his associated rights. He then waived that hearing and responded to the judge's inquiry about his understanding of the rights he was relinquishing by changing his pleas. Throughout the colloquy, he professed satisfaction with his attorney's services and told the court there had been no threats or promises made to get him to change his pleas. He pled guilty to five of the seven charges and told the court he did so because he believed he was guilty of those crimes.

We find no error in the plea process and Diaz has given no persuasive reason to doubt the truth of his answers in that proceeding.

*Conclusion*

The district court found no manifest injustice to support withdrawal of Diaz' pleas. Since we have rejected the arguments that Diaz' counsel was ineffective and that he was coerced into confessing and changing his pleas, we find no error in that decision by the district court.

Affirmed.

11