No. 59,433

THE HONORABLE PAUL W. CLARK and THE HONORABLE JAMES G. BEASLEY, District Court Judges, Eighteenth Judicial District, *Petitioners*, v. JOHN T. IVY, JERRY DRISCOLL, JACK SHRIVER, DEBORAH PURCE JONES, JAMES T. WIGLESWORTH, LYNN ZELLER-BARCLEY, MAURICE J. RYAN, ALAN G. METZGER, PAUL WINKLER, Who Comprise The State Board of Indigents' Defense Services; and RONALD E. MILES, Director of the State Board of Indigents' Defense Services, *Respondents*.

(727 P.2d 493)

Opinion filed October 31, 1986.

*E. Lael Alkire*, of Wichita, argued the cause, and *Thomas M. Warner, Jr.*, of Wichita, was with him on the briefs for petitioners.

· *Stephen M. Joseph*, of Joseph, Robison & Anderson, P.A., of Wichita, argued the cause, and *Mark F. Anderson*, of the same firm, was with him on the brief for respondents.

The opinion of the court was delivered by

MCFARLAND, J.: This is an original mandamus action wherein petitioner judges seek to compel respondent members of the State Board of Indigents' Defense Services to pay compensation to seven attorneys appointed by petitioners to represent defendants in 1984.

Before proceeding to the issues, the background facts which led to the commencement of this unpropitious litigation must be

set forth in some detail. Prior to 1982, the Board of Supervisors of Panels to Aid Indigent Defendants within the judicial branch administered the state program for compensation of court-appointed defense attorneys for indigent defendants in criminal felony cases. Effective July 1, 1982, the Board of Supervisors was abolished and its function was transferred to the newly created State Board of Indigents' Defense Services operating within the executive branch of state government. See Indigents' Defense Services Act, K.S.A. 22-4501 *et seq.* The change was not opposed by the judicial branch.

One of the primary factors leading to the change in administration of the program was legislative concern over the increasing cost of providing legal services to indigent defendants in criminal felony cases. Public defender programs had been established prior to 1982 in some judicial districts, but the majority of judicial districts had no such program. The Eighteenth Judicial District (Sedgwick County), in which petitioners serve as district judges, did not have a public defender program and, by virtue of the large number of criminal cases arising therefrom, a substantial portion of state monies allocated for payment of court-appointed indigents' defense counsel was being expended each year in that district. The concept of establishing a public defender program in the Eighteenth Judicial District as a means of cost containment had been raised a number of times but never came to fruition. The judiciary in the district never endorsed the establishment of a public defender office, and some members thereof went on record as being opposed thereto.

The duties and powers of the newly created State Board of Indigents' Defense Services are set forth in K.S.A. 1985 Supp. 22-4522. That statute, in part, provides:

"The state board of indigents' defense services shall:

"(a) *Provide, supervise and coordinate, in the most efficient and economical manner possible,* the constitutionally and statutorily required *counsel* and related services for *each indigent person accused of a felony* and for such other indigent persons as prescribed by statute;

"(b) *establish, in each county or combination of counties designated by the board, a system of appointed counsel, contractual arrangements for providing contract counsel or public defender offices,* or any combination thereof, on a full- or part-time basis, for the delivery of legal services for indigent persons accused of felonies . . ." (Emphasis supplied.)

On October 15, 1983, the State Board of Indigents' Defense

Services (hereinafter referred to as the "Board") voted to establish a public defender office in the Eighteenth Judicial District and notice of the decision was sent three days later to Judge James Noone, the district's administrative judge, and to Judge Paul Clark, petitioner herein and presiding judge of the district's criminal division.

On June 18, 1984, the public defender office, consisting of seven staff attorneys, opened for business in the district. On June 29, 1984, the Board met and received a report from the district's chief public defender that "Judge Clark did not appoint him to an A felony case and said that he would decide on a case by case basis whether to appoint the public defender to such cases in the future." The same day the Board adopted a policy "that in public defender districts the administrative judges appoint the public defender offices to A, B and C felonies (most serious offenses) in lieu of assigned counsel unless a conflict of interest arises and that the Board will review such claims from assigned counsel to decide whether or not such claims will be paid." The minutes of the Board for that day further reflect that a motion was passed to inform Judge Clark of the policy just adopted and this was done.

The district's public defender office continued to monitor court appointments and reported to the Board seven appointments of private attorneys occurring between August 24, 1984, and December 10, 1984, in which the public defender office was not aware of any conflict with its office which would preclude representation by that office. As the claims started coming in from the seven attorneys involved, the Board requested an opinion from the Kansas Attorney General. The question posed was the "extent of the Board's authority to deny claims for compensation filed by attorneys appointed to represent indigent criminal defendants in districts where the board has established a public defender office to provide legal services to such defendants." Attorney General Opinion No. 84-119, dated December 13, 1984, concluded the Board had the authority to deny claims "which do not comply with the board's plan for the provision of such services."

Sometime in early December 1984, respondent Director Miles met with petitioner Clark concerning the Board's review of claims submitted. On December 13, 1984, respondent Jones (Board Chairperson) sent the following letter to petitioner Clark:

Dear Judge Clark:

"As chairperson of the State Board of Indigents' Defense Services, I was informed of your recent meeting with our director Ron Miles. I should mention that Mr. Miles made a special effort to accommodate your request for this meeting in order that our mutual concerns could be discussed. From the tenor and content of the questions you posed to Mr. Miles, I can only assume that you perceived the board's policy to review certain defense vouchers to be directed at or against you individually.

"Let me assure you that the board does not nor has it ever entertained a policy to review claims based on which judge has approved them. I am surprised that there has been any misunderstanding of the board's role in providing felony defense services for the state of Kansas. I am especially dismayed that the board's motives in this area are being questioned.

"The board must fulfill its statutory mandate to 'provide, supervise and coordinate in the most efficient and economical manner possible the . . . services for each indigent person accused of a felony.' (K.S.A. 22-4522(a)). For this noble and ofttimes thankless task, board members are compensated at the rate of $35 per day for approximately eight full work days per year.

"The board's dilemma has been that of funding which is inadequate to maintain two systems of defense services in the same district except when absolutely necessary (e.g. conflict cases). This dilemma and the board's policy for addressing it are not confined to the 18th judicial district of Kansas.

"As to the source of this misunderstanding, I am sure you have reached the same conclusion that I have about it. An investigator, James Howard, was extremely upset by the board's decision to deny a portion of his claim. If your information has been gleaned from Mr. Howard I will suggest that the board's actions at that meeting have been grossly misrepresented to you. While it is true that some frustration was expressed by individual board members over the apparent lack of consistent voucher review practices throughout the state, the report you received indicating that the board's action was a personal attack on you is patently false and may be intended to detract from the real issue which is that of the appropriateness of Mr. Howard's claim.

"I have enclosed a copy of the minutes of the board's June 29th meeting in the hopes that this matter can be laid to rest. I sincerely hope that any future misunderstandings can be resolved in a much more informal and timely manner through effective communication.

"I have also enclosed for your information a copy of the recent Attorney General Opinion which should clarify the basis for the board's policy of reviewing all nonconflict claims from public defender districts.

"I trust your personal concerns have been addressed as a result of this letter and your meeting with Mr. Miles. Please do not hesitate to call on Mr. Ney or Mr. Miles if you perceive a problem in the operations of the Public Defender's Office. Thank you for your interest.

Respectfully,

/s/ Deborah Purce Jones
Deborah Purce Jones
Chairperson

The stipulation filed herein reflects the following transpired

thereafter relative to the seven private attorney appointments questioned by the public defender office.

"25. On March 22, 1985, the Board at a regular meeting considered the claims of the attorneys appointed in cases 1, 3, 4, 5, and 6 pursuant to its policy to review all vouchers from districts served by a public defender office unless the case could not have been handled by the office because of a conflict of interest or other mitigating circumstances. Consideration of the claims was tabled and the Board's Director was requested to write to Judge Clark asking for information regarding these appointments. The minutes of that meeting are Exhibit 12.

"26. By letter dated March 25, 1985, the Director invited Judge Clark to provide any input he may have concerning the circumstances of the appointments in cases 1, 3, 4, 5, and 6. That letter is Exhibit 13. Louis Hentzen, Judge Clark's Administrative Assistant, responded to that letter at Judge Clark's direction by telephoning the Board's office with the following message: 'Judge Clark says he will not justify to anyone or anybody why he appointed which attorney on what case. However, it is the policy of this court to appoint the public defender office when there is no conflict in the particular case.'

"27. On June 28, 1985, the Board at a regular meeting considered the claims of the attorneys appointed in cases 1 through 7 and denied them 'due to the board's policy not to pay assigned counsel in cases where the public defender office could have been appointed.' The minutes of that meeting are Exhibit 14. The attorneys submitting vouchers in those cases were notified by mail of the Board's decision.

"28. On September 21, 1985, the Board at a regular meeting reconsidered the claims of the attorneys appointed in cases 1 through 7 and, after conferring with counsel in an executive session, tabled those claims 'until receipt of a letter from Judge Clark outlining the reason for their appointments.' The minutes of that meeting are Exhibit 15.

"29. There is no documentation in the Court's files or in the District Attorney's files evidencing a conflict of interest in cases 1 through 7 which would have prevented the appointment of the Public Defender's Office. Except for the appointment of Ronald D. DeMoss in case 2, neither Judge Clark nor Judge Beasley has a present recollection of why private counsel were appointed to represent the defendants in cases 1 and 3 through 7."

Subsequently, the controversy escalated when petitioner Clark went on the offensive. The stipulation filed herein reflects the following:

"1. There is pending before Paul W. Clark, a Judge of the Eighteenth Judicial District, District Court, Sedgwick County, Kansas, a civil contempt proceeding involving seven criminal cases that were litigated to conclusion in the Eighteenth Judicial District of the State of Kansas.

"2. Those seven criminal cases are consolidated for the purposes of this hearing into a single proceeding. There was an Amended Order dated the 19th day of August, 1985, in which the Court ordered the Board and its individual members to either:

"1. Cause the State Board of Indigents' Defense Services to pay compen-

sation for legal services rendered by and reimburse expenses reasonably incurred by appointed counsel in the cases captioned above, all pursuant to 1984 Supp. K.S.A. 22-4507, 1984 Supp. K.S.A. 22-4508 and 1984 Supp. K.S.A. 22-4520; or

"2. Be and appear personally in Wichita, Kansas, Courtroom 6-2, Sedgwick County Courthouse, Division Nine, District Court, at 10:30 o'clock a.m., September 30, 1985, there to show cause why you should not be held in contempt of court.

By agreement, the date and time for the individual members of the Board to appear and show cause was continued to 10:00 o'clock a.m. on December 2, 1985, and thereafter the case was again continued to 10:00 o'clock a.m. on January 10, 1986.

"3. On December 2, 1985, counsel for the parties, along with Judge Clark, held a conference where it was agreed that the parties had a substantial disagreement as to the rights, powers and authority of the parties. It was also agreed that the relevant issues in this matter involved the constitutional separation of powers doctrine and that this case would ultimately be appealed. The parties concluded that it would be appropriate to proceed by way of an original action in mandamus in the Supreme Court of the State of Kansas, if that Court would accept jurisdiction, to settle the dispute between the Judiciary and the Board. Therefore the contempt proceedings were continued."

This action resulted with the contempt proceeding being held in abeyance during the pendency of this litigation. We turn now to the issues presented.

## SEPARATION OF POWERS

The position of the petitioners is essentially as follows:

1. The judiciary has the right to appoint any qualified attorney it pleases to represent an indigent defendant in a criminal case.

2. The Board has an absolute duty to pay claims for services submitted by any attorneys so appointed without review or inquiry into the circumstances of appointment as any such inquiry or review would be violative of the separation of powers doctrine.

The respondents' position in this regard may be summarized as follows:

1. The Board has the duty to establish a program in each county for providing legal services to indigent defendants in felony cases.

2. The Board has the duty to review and reject claims when the appointment was made contrary to the program it established for a particular county.

3. The review and possible rejection of claims by the Board is not violative of the separation of powers doctrine.

In *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59-60, 687 P.2d 622 (1984), this court said of the separation of powers:

"Like the Constitution of the United States, the Kansas Constitution contains no express provision establishing the doctrine of separation of powers. However, it has been recognized that the very structure of the three-branch system of government gives rise to the doctrine. *State v. Greenlee*, 228 Kan. 712, 715, 620 P.2d 1132 (1980); *State ex rel. v. Bennett*, 219 Kan. [285, 287, 547 P.2d 786 (1976)]; *Leek v. Theis*, 217 Kan. 784, 804, 539 P.2d 304 (1975); *Van Sickle v. Shanahan*, 212 Kan. 426, 440, 511 P.2d 223 (1973). The doctrine of separation of powers is an outstanding feature of the American constitutional system. The governments, both state and federal, are divided into three branches, *i.e.*, legislative, executive and judicial, each of which is given the powers and functions appropriate to it. Thus, a dangerous concentration of power is avoided through the checks and balances each branch of government has against the other. *Van Sickle v. Shanahan*, 212 Kan. at 439-40; *State, ex rel. v. Bennett*, 219 Kan. at 287; *State v. Greenlee*, 228 Kan. at 715. Generally speaking, the legislative power is the power to make, amend, or repeal laws; the executive power is the power to enforce the laws; and the judicial power is the power to interpret and apply the laws in actual controversies. *Van Sickle v. Shanahan*, 212 Kan. at 440.

"The fact that the powers of one department may overlap with another department's powers has long been a recognized fact. Recent cases have taken a pragmatic, flexible and practical approach to the doctrine, giving recognition to the fact there may be a certain degree of blending or admixture of the three powers of government and that absolute separation of powers is impossible. *State v. Greenlee*, 228 Kan. at 715-16; *Leek v. Theis*, 217 Kan. at 805-06; *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. [20, 32, 643 P.2d 87 (1982)]. The following general principles concerning the separation of powers doctrine were summarized in *State v. Greenlee*, 228 Kan. at 716:

" '(1) A statute is presumed to be constitutional. All doubts must be resolved in favor of its validity, and before a statute may be stricken down, it must clearly appear the statute violates the constitution. *Leek v. Theis*, 217 Kan. 784.

" '(2) When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. *Leek v. Theis*, 217 Kan. at 785; *State, ex rel., v. Fadely*, 180 Kan. 652, 308 P.2d 537 (1957).

" '(3) A usurpation of powers exists when there is a significant interference by one department with operations of another department. *State, ex rel., v. Bennett*, 219 Kan. 285, 547 P.2d 786 (1976).

" '(4) In determining whether or not a usurpation of powers exists a court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time. *State, ex rel., v. Bennett*, 219 Kan. 285.' "

With these principles in mind, let us consider how appointment of counsel and compensation therefor operate in Kansas.

The judiciary has the obligation to appoint counsel for indigent defendants charged with crimes, whether felonies or misdemeanors. Likewise, the judiciary has certain obligations to appoint attorneys in proceedings under the Code for Care of Children (K.S.A. 1985 Supp. 38-1501 *et seq.*) and the Juvenile Offenders Code (K.S.A. 1985 Supp. 38-1601 *et seq.*). Payment of fees of attorneys so appointed in juvenile proceedings is provided by counties. Payment of fees of attorneys appointed for indigent defendants charged only with misdemeanor offenses, likewise, has not been assumed by the State. Only in cases involving felonies does the State provide means for expending state monies for providing legal services to indigent defendants. The legislature has never given a blank check for payment of such attorney fees. Whether under the Board of Supervisors within the judicial branch (prior to 1982) or the present Board within the executive branch, payment of fees was always subject to funds available. The mere appointment of an attorney by a court in a felony criminal case does not create an absolute duty on the part of the State to compensate that attorney in full or in part for his or her services. As we held in *State v. Keener*, 224 Kan. 100, 577 P.2d 1182, *cert. denied* 439 U.S. 953 (1978):

"It is the moral and ethical obligation of the bar to make representation available to the public. (See, Canon 2, Code of Professional Responsibility, 220 Kan. cx.) Quite often, fulfillment of that obligation involves the representation of a client, particularly a criminal defendant, for little or no remuneration. Enactment of K.S.A. 22-4501, *et seq.* has served to relieve some of the hardships involved in fulfilling an attorney's obligation to provide legal representation to the public; but it has not cancelled the attorney's ethical responsibility to provide representation without compensation if necessary. Court appointed counsel has no constitutional right to be compensated, much less to receive full and adequate compensation which may have been received if the same time had been spent on a fee-paying client's problems. (See, *United States, v. Dillon*, 346 F.2d 633 [9th Cir. 1965].)" 224 Kan. at 102.

Cost containment in the area of state expenditures in providing counsel to indigent defendants in felony criminal cases has been a legislative concern for many years. Such concern was a primary reason for the creation of the Board. K.S.A. 1985 Supp. 22-4522 outlines the Board's power and duties, as follows:

"The state board of indigents' defense services shall:

"(a) *Provide, supervise and coordinate, in the most efficient and economical manner possible, the constitutionally and statutorily required counsel and related services for each indigent person accused of a felony* and for such other indigent persons as prescribed by statute;

"(b) *establish, in each county or combination of counties designated by the board, a system of appointed counsel, contractual arrangements for providing contract counsel or public defender offices,* or any combination thereof, on a full- or part-time basis, for the delivery of legal services for indigent persons accused of felonies;

"(c) approve an annual operating budget for the board and submit that budget as provided in K.S.A. 75-3717;

"(d) adopt rules and regulations in accordance with K.S.A. 77-415 *et seq.*, and amendments thereto, which are necessary for the operation of the board and the performance of its duties and for the guidance of appointed counsel, contract counsel and public defenders, including but not limited to:

"(1) *Standards for entitlement to legal representation at public expense;*

"(2) standards and guidelines for compensation of appointed counsel and investigative, expert and other services within the limits of appropriations;

"(3) criteria for employing contract counsel; and

"(4) qualifications, standards and guidelines for public defenders, appointed counsel and contract counsel;

"(e) prepare and submit to the governor and legislature an annual report on the operations of the board; and

"(f) hold a hearing before changing the system for providing legal services for indigent persons accused of felonies in any county or judicial district if such a hearing is requested by two or more members of the board." (Emphasis supplied.)

Clearly, the Board is to establish the most cost-effective means in each county or combination of counties of adequately providing legal services for indigents accused of felony charges. The Board may, in its discretion, determine that in a given county a public defender office will be established. Certainly, the Board had the right to establish the public defender office in Sedgwick County, and even petitioners do not contend otherwise. K.S.A. 1985 Supp. 22-4522 further provides the Board shall establish the "[s]tandards for entitlement to legal representation at public expense."

These procedures dovetail with K.S.A. 1985 Supp. 22-4503(c) which provides, after a determination of indigency, the trial court shall:

"appoint an attorney from the panel for indigents' defense services or otherwise in accordance with the applicable system for providing legal defense services for indigent persons prescribed by the state board of indigents' defense services for the county or judicial district."

The Indigents' Defense Services Act further provides in K.S.A. 1985 Supp. 22-4507(a):

"An *attorney*, other than a public defender or assistant public defender or contract counsel, *who performs services* for an indigent person, *as provided by this act*, shall at the conclusion of such service or any part thereof *be entitled to compensation for such services* and to be reimbursed for expenses reasonably incurred by such person in performing such services." (Emphasis supplied.)

We believe the intent and purpose of the Act is clear. The Board determines what program or combination of programs will be used in particular counties to provide state-paid defense counsel. The Board is directly responsible to the legislature for the development and operation of such programs and for the expenditure of all state monies allocated for payment of legal services for indigent defendants in felony cases. To fulfill its statutorily mandated duties, the Board must have the power to review and monitor claims and reject claims not authorized by the standards and programs established. Suppose a public defender office is established in County A by the Board and further suppose the judge or judges in the county totally ignore the public defender office and make all appointments from the private bar. Obviously then, the Board, if it were required to pay claims without question to all such private attorneys, would be paying for duplicate services. The Board would have no ability to carry out its legislative mandate.

We do not believe there is a valid separation of powers issue before us. The executive branch is not infringing herein upon the judicial branch. A judge may appoint any attorney he or she pleases who is capable of adequately representing a defendant providing, of course, the attorney accepts the appointment. There is no infringement on the judicial right or duty of appointment. It is only where compensation for the services of such appointed attorney is expected to be paid from state monies that compliance with the Board's programs, standards, and policies becomes involved. The position of petitioners that review of claims of appointed counsel by the Board and rejection thereof, if not in compliance with the programs, standards, and policies of the Board, is a violation of the separation of powers doctrine is both legally and logically untenable.

## TECHNICAL COMPLIANCE

The preceding issue has been concerned with power—what the Board has the power to do. The issue before us now is a

technical one concerning the legal effect of the adoption by the Board on June 29, 1984, of a policy "that in public defender districts the administrative judges appoint the public defender offices to A, B and C felonies (most serious offenses) in lieu of assigned counsel unless a conflict of interest arises and that the Board will review such claims from assigned counsel to decide whether or not such claims will be paid." Immediately after the policy was adopted, the minutes of the Board meeting reflect: "A motion was passed instructing Mr. Miles [State Director of Indigents' Defense Services] to prepare a communication to Judge Clark expressing the Board's concern and informing him that if he should appoint assigned counsel to A and B felonies that the Board will review all such claims and pay on a case by case basis." As will be recalled, the Board had just heard from the chief public defender in the new Sedgwick County public defender office of an appointment by Judge Clark of private counsel for a defendant charged with an A felony where no apparent conflict existed as far as the public defender office was concerned. It is undisputed the message concerning the new policy was forthwith transmitted to Judge Clark by telephone. All of the appointments involved herein occurred after adoption of the policy and notification thereof to Judge Clark.

K.S.A. 1985 Supp. 22-4522(d), in pertinent part, authorizes the Board to:

"[A]dopt rules and regulations in accordance with K.S.A. 77-415 *et seq.*, and amendments thereto, which are necessary for the operation of the board and the performance of its duties and for the guidance of appointed counsel, contract counsel and public defenders, including but not limited to:

"(1) Standards for entitlement to legal representation at public expense;

"(2) standards and guidelines for compensation of appointed counsel and investigative, expert and other services within the limits of appropriations . . .."

K.S.A. 1985 Supp. 77-425 provides, in pertinent part:

"Any rule and regulation not filed and published as required by this act shall be of no force or effect, except that any error or irregularity in form or any clerical error or omission of the revisor of statutes in the filing of such regulation not affecting substantial rights shall not invalidate the same."

At the time of the appointments herein there was no rule or regulation filed and published in accordance with K.S.A. 1985 Supp. 77-425 expressing the policy established in the Board's June 29, 1984, meeting relative to appointment of the public defender office to A, B, and C felony cases.

The position of the petitioners is that failure to file and publish the policy pursuant to K.S.A. 1985 Supp. 77-425 rendered the policy of no force or effect, thereby nullifying any requirement that the public defender office be appointed to such cases. Therefore, so petitioners' argument goes, they were free to appoint private counsel under the system created prior to the establishment of the public defender office and such appointments are. in compliance with regulations published by the Board (K.A.R. 105-1-1 *et seq.*).

We find this argument to be without merit. The requirement for filing and publishing rules and regulations is primarily one of dissemination of information. Members of the public, and others affected thereby, should not be subjected to agency rules and regulations whose existence is known only by agency personnel. The attorneys whose claims are involved are not parties to this litigation. Rather, petitioners are members of the judiciary and actual notice of the policy was given to Judge Clark as presiding judge of the criminal division of the Eighteenth Judicial District. Presumably, he passed this information on to Judge Beasley. There is no contention Judge Beasley was unaware of the establishment of the policy. The public defender office had opened for business on June 18, 1984. Eleven days later a possible problem which could jeopardize the operation of the office was brought to the attention of the Board. The Board adopted a policy designed to eliminate the problem and caused notice thereof to be communicated directly to the presiding judge of the criminal division where the problem originated. We conclude that under the facts herein the June 29, 1984, policy declaration by the Board was valid and applicable to subsequent appointments by the petitioner judges as to any issue concerned in the litigation between the parties herein.

## CONCLUSION

K.S.A. 60-801 provides:

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

In *Arney v. Director, Kansas State Penitentiary*, 234 Kan. 257, 671 P.2d 559 (1983), we stated the general rules relative to mandamus as follows:

"K.S.A. 60-801 defines mandamus as a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

"It has uniformly been held that the remedy of mandamus is available only for the purpose of compelling the performance of a clearly defined duty; that its purpose is to require one to whom the writ or order is issued to perform some act which the law specifically enjoins as a duty resulting from an office, trust, or station; that mandamus may not be invoked to control discretion and neither does it lie to enforce a right which is in substantial dispute, and further, that resort to the remedy may be had only when the party invoking it is clearly entitled to the order which he seeks." Syl. ¶¶ 1, 2.

Clearly, the Board herein exercised discretion in the handling of the subject claims by attorneys appointed to represent indigent defendants and has no "clearly defined duty" to pay such claims. The Board's activities in the area involve considerably more than ministerial acts. The Petition for Writ of Mandamus must be denied.

Before concluding, some additional comments are in order. It is most unfortunate that this controversy and litigation ever occurred. It is hoped that petitioners will, in the future, adopt a more reasonable and conciliatory approach to the Board. The judiciary, the Board, and attorneys representing indigents are bound together in the common goal of providing adequate legal services to indigent defendants on a cost-effective basis and should work together to accomplish that goal. The attorneys providing the legal services herein who have had their claims rejected have, through no apparent fault of their own, become casualties in a territorial dispute between two members of the judiciary and a state agency. It is hoped the denial of their claims will be reviewed in the future and sufficient information will then be provided to the Board by petitioners or the attorneys themselves to enable compensation to be paid.

The petition for writ of mandamus is denied.

HOLMES and HERD, JJ., concur in the result.