(18 P.3d 970)
No. 84,145

STATE OF KANSAS, *Appellee,*
v. WILLIAM H. CHACON-BRINGUEZ, *Appellant.*

 Opinion filed February 23, 2001. 

*Daniel C. Estes,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Lee J. Davidson,* deputy county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before RULON, C.J., ELLIOTT, J. and WAHL, S.J.

RULON, C.J.: Defendant William H. Chacon-Bringuez appeals the conviction of driving under the influence (DUI), *i.e.,* operating a vehicle while his blood alcohol concentration was .08 or more, in violation of K.S.A. 2000 Supp. 8-1567. We affirm.

The material facts are as follows:

On April 3, 1999, at 8:35 p.m., Kansas Highway Patrol Trooper Dallas Gilmore observed a pickup truck displaying a personalized license tag "WILLIAM" on the rear of the vehicle but not on the front, in violation of K.S.A. 2000 Supp. 8-133. Gilmore pulled the vehicle over to the shoulder and asked the driver for identification. A valid driver's license identified the driver as the defendant.

During the initial contact with defendant, Gilmore detected the odor of alcohol on defendant's breath and noticed his eyes were bloodshot and watery. Additionally, there were nine beers left in a 12-pack box in the truck. Based on these observations, Gilmore requested defendant exit his vehicle and come back to the patrol car. As defendant exited the truck, he had to lean on it to maintain his balance while he was walking back to the patrol car.

Inside the patrol car, defendant admitted he had consumed three beers earlier in the day. Gilmore requested defendant to submit to a preliminary breath test (PBT) and defendant agreed.

Gilmore testified he was certified to use the device and followed the instructed protocol in giving the PBT. The test resulted in a red display, indicating the breath sample was over the legal limit.

After the PBT, Gilmore requested defendant to perform some field sobriety tests. The first test administered was the walk and

turn test. This test was developed to help the officer obtain clues about a driver's possible impairment by requiring the driver to perform more than one task at once. The test requires the driver to: (1) maintain a heel-to-toe position while being instructed, (2) not use his or her arms for balance, (3) walk nine steps in a heel-to-toe fashion, (4) make a specifically instructed turn, and (5) return to the starting point with nine heel-to-toe steps.

Gilmore noticed the following clues of impairment during defendant's performance of the test: (1) defendant lost his balance three times during the instructions, (2) defendant walked off the line, and (3) defendant made an improper turn.

The second field sobriety test administered was the one-leg stand. This test requires the driver to stand with his heels together and his arms at his side while being instructed. The driver is instructed to count to 30—1001, 1002, 1003, and so on—while keeping one leg raised about 6 inches off the ground.

Gilmore noticed several clues of impairment during the test: (1) defendant swayed once while he was trying to balance himself and (2) it took him 40 seconds to count to 30, which Gilmore interpreted as indicating that defendant's system was depressed. However, at the suppression hearing, Gilmore stated swaying was not an actual clue but it simply helped the officer to evaluate the driver's condition.

After completing the field sobriety tests, Gilmore arrested defendant at 9 p.m. While waiting for a towing truck, Gilmore conducted a vehicle inventory and logged in nine unopened cans of beer from a 12-pack box. Gilmore transported defendant to jail and requested defendant to submit to a blood test, after giving the required implied consent advisories to him. A medical technologist took the blood sample at 10:02 p.m. and mailed it to the Kansas Bureau of Investigation for testing. The test results showed the blood alcohol concentration was .17.

Prior to the preliminary hearing, defendant filed a motion to suppress the results of the blood test, claiming that Gilmore lacked probable cause for an arrest. Defendant additionally filed a motion challenging the constitutionality of K.S.A. 2000 Supp. 8-1012, which allows an arrest based solely on the results of a PBT.

After the preliminary hearing, the trial court simply denied the motion to suppress without making factual findings on the record. The court held that K.S.A. 2000 Supp. 8-1012 did not violate the separation of powers doctrine because the statute did "not interfere with the Court's ability to review whether the officer did in fact have probable cause to make said arrest."

Defendant was convicted of DUI, defined as driving while having a blood alcohol concentration of .08 or more as measured within 2 hours of the time of operating the vehicle. See K.S.A. 2000 Supp. 8-1567(a)(2). Defendant was placed on 2 years' probation after serving a mandatory 90-day sentence, with an underlying sentence of 12 months in jail.

Defendant appeals his conviction.

## Constitutionality of K.S.A. 2000 Supp. 8-1012

Defendant argues a statute that allows a law enforcement officer to make an arrest based solely on the results of a PBT is unconstitutional because of a violation of the separation of powers doctrine.

K.S.A. 2000 Supp. 8-1012, in part, provides:

"If a person submits to the test, the results shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto. *A law enforcement officer may arrest a person based in whole* or in part *upon the results of a preliminary screening test*. Such results shall not be admissible in any civil or criminal action except to aid the court or hearing officer in determining a challenge to the validity of the arrest or the validity of the request to submit to a test pursuant to K.S.A. 8-1001 and amendments thereto." (Emphasis added.)

Interpretation of a statute is a question of law, and an appellate court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). The general rules of constitutional construction are as follows:

" 'It is fundamental that our state constitution limits rather than confers powers. Where the constitutionality of a statute is involved, the question presented is, therefore, not whether the act is authorized by the constitution, but whether it is prohibited thereby. [Citations omitted.]

'The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

'In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

'Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]

'Courts do not strike down legislative enactments on the mere ground they fail to conform with a strictly legalistic definition or technically correct interpretation of constitutional provisions. The test is rather whether the legislation conforms with the common understanding of the masses at the time they adopted such provisions and the presumption is in favor of the natural and popular meaning in which the words were understood by the adopters. [Citations omitted.]' " *State ex. rel. Stephan v. Parrish*, 257 Kan. 294, 297, 891 P.2d 445 (1995) (quoting *State ex. rel. Schneider v. Kennedy*, 225 Kan. 13, 20-21, 587 P.2d 844 [1978]).

The principle of separation of powers is not enumerated specifically in the Kansas or United States Constitutions, but is implied from the structure of federal and state government. *State v. Greenlee*, 228 Kan. 712, 715, 620 P.2d 1132 (1980) (citing *Dreyer v. Illinois*, 187 U.S. 71, 47 L. Ed. 79, 23 S. Ct. 28 [1902]). However, it does not necessarily flow that an entire and complete separation is either desirable or was ever intended by the framers of the constitution. *State v. Ponce*, 258 Kan. 708, 711, 907 P.2d 876 (1995). Early decisions attempted to apply the doctrine strictly, refusing to tolerate any overlapping of powers, but the more recent cases have modified the doctrine, taking a more pragmatic, flexible, and practical approach giving recognition to the fact there may be a certain degree of "blending or admixture" of the three powers of government. *Greenlee*, 228 Kan. at 715-16.

There are two types of cases involving the separation of powers doctrine: (1) the unlawful delegation of legislative authority to another branch of government and (2) the usurpation of the powers of one branch by another branch. *Ponce*, 258 Kan. at 712.

When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. *Greenlee*, 228 Kan. at 716. The issue here involves a claim of an executive branch's usurpation

of power to determine probable cause by the judicial branch in K.S.A. 2000 Supp. 8-1012. A usurpation of powers exists when there is a significant interference by one department with operations of another department. A court should consider (1) the essential nature of the power being exercised; (2) the degree of control by one department over another; (3) the objective sought to be attained by the legislature; and (4) the practical result of the blending of powers as shown by actual experience over a period of time. *Greenlee*, 228 Kan. at 716.

Here our inquiry is whether the language in K.S.A. 2000 Supp. 8-1012, which allows law enforcement officers to rely solely on the PBT results to arrest a driver for DUI, is a violation of the separation of powers between the judicial and executive branches of state government. The essential nature of the power being exercised here involves the probable cause determination for a lawful arrest without a warrant. See K.S.A. 2000 Supp. 22-2401(c). Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. *Gerstein v. Pugh* 420 U.S. 103, 111, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975). The United States Supreme Court further discussed the necessary accommodation between the individual's right to liberty and the State's duty to control crime:

" 'These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable [persons] acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' " *Gerstein*, 420 U.S. at 112 (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76, 93 L. Ed. 1879, 69 S. Ct. 1302 [1949]).

Making an arrest without a warrant where the officer is faced with a possible DUI suspect is essential to enforcement of the law

when weighed against the grave dangers caused by drunk driving. Relying on the results of a PBT in arresting the suspect is a practical consideration for officers when faced with an ambiguous situation.

In *State v. Favela*, 259 Kan. 215, 911 P.2d 792 (1996), the State argued that the sentencing court's decision to sentence the defendant as if he had been convicted of aggravated assault, instead of the attempted murder charge of which he was convicted, was a violation of the separation of powers between the judicial and executive branches. The *Favela* court followed the analysis for separation of powers doctrine and concluded that if the sentencing court usurped the power of the prosecutor at all, it did so in a very limited way and did not violate the separation of powers doctrine. 259 Kan. at 224.

The Kansas courts have consistently approved the legislature's certain control over the judiciary's power to impose sentence in criminal cases. K.S.A. 2000 Supp. 8-1012 provides that a law enforcement officer may request a person to submit to a PBT if the officer has reasonable grounds to believe the person (1) has alcohol in the body, (2) has committed a traffic infraction, or (3) has been involved in a vehicle accident or collision. Furthermore, refusal to take and complete the test is a traffic infraction. The degree of control by the legislature is limited to the arrests made for possible DUI based on the test results of a PBT.

K.S.A. 2000 Supp. 8-1012 is a part of K.S.A. 8-1001 *et seq.*, known as the Kansas Implied Consent Law. The ultimate goal of the measures of the implied consent law is "to protect the health and safety of Kansas citizens by reducing the incidences of drinking and driving, alcohol-related crashes, injuries, and fatalities." *State v. Mertz*, 258 Kan. 745, 757-58, 907 P.2d 847 (1995).

A PBT is an important tool for law enforcement officers to determine whether an arrest should be made in order to protect the health and safety of citizens.

Defendant argues that if a person failed a PBT, the statute compels a finding that probable cause existed, regardless of the other circumstances. However, the arrest is not mandatory; the statute states a "law enforcement officer *may* arrest a person based in whole or in part upon the results" of the test. (Emphasis added.)

K.S.A. 2000 Supp. 8-1012. At the time the test is requested, an officer is required to give oral notice that (1) there is no right to consult with an attorney regarding whether to submit to testing, (2) refusal to submit to testing is a traffic infraction and (3) further testing may be required. The statute further provides that "the results shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto." K.S.A. 2000 Supp. 8-1012.

Here, Gilmore did not, in fact, arrest defendant immediately after defendant's failed PBT; instead, Gilmore requested defendant perform field sobriety tests. Defendant was arrested after he failed all the tests.

Furthermore, the results of a PBT are not "admissible in any civil or criminal action except to aid the court . . . in determining a challenge to the validity of the arrest or the validity of the request to submit to a test pursuant to K.S.A. 8-1001 and amendments thereto." K.S.A. 2000 Supp. 8-1012. The PBT results are not evidence of guilt for a DUI charge because it is not admissible at trial. K.S.A. 2000 Supp. 8-1012 does not have a chilling effect on the defendant's ability to challenge an arrest for lack of probable cause. Judicial determination of probable cause in a warrantless arrest is always available; it is not abrogated by the provisions in K.S.A. 2000 Supp. 8-1012.

In summary, the portion of K.S.A. 2000 Supp. 8-1012 allowing an officer to make his or her determination whether to make an arrest based solely or in part upon the results of a PBT does not constitute a significant interference by the legislature with the function of judiciary. Taking a more pragmatic, flexible, and practical approach to dealing with possible DUI suspects under the specific facts and circumstances presented here, a certain degree of blending of the powers of legislature and judiciary should be recognized. See *Greenlee*, 228 Kan. at 715-16. After considering the four factors enumerated in *Greenlee*, with the presumption of constitutionality of the statutes in mind, we conclude K.S.A. 2000 Supp. 8-1012 is constitutionally valid.

**Failure to Suppress**

Defendant argues his performance on the field sobriety tests was good enough to pass the tests and, therefore, there was no probable cause to arrest him under the totality of the circumstances.

The standard of review on the trial court's decision on motion to suppress is stated:

"When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination." *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995); see *State v. DeMarco*, 263 Kan. 727, 732, 952 P.2d 1276 (1998).

After listening to Gilmore's testimony and arguments by counsel, the court denied defendant's motion to suppress the blood alcohol concentration test results without making specific findings of facts. In a DUI case, the answer to the probable cause to arrest question depends on the officer's factual basis for concluding that defendant was intoxicated at the time of arrest. Our review of the trial court's determination of whether an officer had probable cause to make a warrantless arrest in a DUI case is a mixed question of law and fact. *City of Dodge City v. Norton*, 262 Kan. 199, 203, 936 P.2d 1356 (1997).

At the time of the defendant's arrest, Gilmore had the following undisputed information: (1) Gilmore detected the odor of alcohol on defendant's breath and noticed defendant's eyes were bloodshot and watery. (2) There were nine beers in a 12-pack box in the truck. (3) As defendant exited the truck, defendant had to lean on it to maintain his balance while he was walking back to the patrol car. (4) The PBT resulted in a red display, indicating the breath sample was over the legal limit. (5) Defendant admitted he had three beers earlier in the day. (6) Gilmore noticed several clues of impairment during defendant's performance of the walk and turn test: Defendant lost his balance three times during the instructions, defendant walked off the line, and defendant made an improper turn. (7) Gilmore noticed two clues of impairment during the one-leg stand test: Defendant swayed once while he was trying to balance

himself and it took 40 seconds to count to 30, which Gilmore interpreted to indicate defendant's system was depressed.

Unquestionably, there was sufficient evidence to establish probable cause to arrest defendant. The trial court did not err in denying defendant's motion to suppress blood alcohol concentration test results, because defendant's arrest was supported by probable cause.

Additionally, the State argues Gilmore was justified in arresting defendant for a license tag violation under K.S.A. 2000 Supp. 22-2401(d). Gilmore testified he noticed the violation of K.S.A. 2000 Supp. 8-133 which required that personalized license tags be displayed on both the front and rear of a vehicle. The State argues this violation is not a traffic infraction, but a misdemeanor, and Gilmore could make a warrantless arrest based on K.S.A. 2000 Supp. 22-2401(d). Although neither party argues this point on appeal, K.S.A. 2000 Supp. 22-2401(c)(2)(A) seems to apply in this case where the officer had probable cause to believe that the person was committing a misdemeanor and the person would not be apprehended unless the person was immediately arrested. *State v. Hayes*, 8 Kan. App. 2d 531, 533, 660 P.2d 1387 (1983), held that the arresting officers had probable cause to stop defendant's vehicle because its license tag was obscured in violation of K.S.A. 8-133 and, consequently, properly seized marijuana in plain view.

Affirmed.