The Honorable Jim Barone State Senator, 13th District 611 W. Leighton Frontenac, Kansas 66763
Dear Senator Barone:
As State Senator for the 13th District, you ask whether K.S.A. 22-4520
precludes the Board of Indigents' Defense Services from controlling costs associated with private counsel fees, expert witness expenses and other costs in death penalty cases.
K.S.A. 22-4520 states:
 "The state board of indigents' defense services shall not make any decision regarding the handling of any case nor interfere with the appointed counsel, contract counsel or public defender, or any member of the staff thereof, in carrying out their professional duties."
Essentially you ask whether cost control measures that might be taken by the Board would be considered a decision regarding the handling of a case or interference with a case as an appointed counsel, contract counsel or public defender carries out professional duties.
K.S.A. 22-4520 cannot be read in a vacuum, but must be understood in relation to several other statutes within the Aid to Indigent Defendants Act.[1] One such statute establishes the Board's powers and duties[2]
as including:
 "(a) Provide, supervise and coordinate, in the most efficient and economical manner possible, the constitutionally and statutorily required counsel and related services for each indigent person accused of a felony and for such other indigent persons as prescribed by statute;
. . . .
 "(e) adopt rules and regulations in accordance with K.S.A. 77-415 et seq., and amendments thereto, which are necessary for the operation of the board and the performance of its duties and for the guidance of appointed counsel, contract counsel and public defenders, including but not limited to: . . . (2) standards and guidelines for compensation of appointed counsel and investigative, expert and other services within the limits of appropriations. . . ."[3]
Other statutes also address monetary issues in relation to representation of indigent defendants.
Regarding appointed counsel's compensation and reimbursement for expenses, K.S.A. 2002 Supp. 22-4507(a) entitles the attorney to "compensation for such services and to be reimbursed for expensesreasonably incurred by such person in performing such services." Under that statute, such compensation "shall be paid in accordance withstandards and guidelines contained in rules and regulations adopted by the state board of indigents' defense services."[4]
Regarding investigative, expert and other services, K.S.A. 22-4508
provides:
 "Within the standards and guidelines adopted by the state board of indigents' defense services, the district court shall determine reasonable compensation for the services and approve payment to the organization or person who rendered them upon the filing of a certified claim for compensation supported by a written statement specifying the time expended, services rendered, expenses incurred on behalf of the defendant, and the compensation received in the same case or for the same services from any other source."[5]
Regarding appeals in capital murder cases, K.S.A. 2002 Supp.22-4505(d)(1)(C) provides:
 "The state board of indigents' defense services shall provide by rule and regulation for: . . . (C) the reasonable compensation of counsel appointed to represent individuals convicted of capital murder and under a sentence of death in the appeal of such cases and for reasonable and necessary litigation expense
associated with such appeals."[6]
Regarding post-appeal remedies, K.S.A. 2002 Supp. 22-4506(d)(1)(C) similarly provides:
 "The state board of indigents' defense services shall provide by rule and regulation for: . . . (C) the reasonable compensation of counsel appointed to represent individuals convicted of capital murder and under a sentence of death, during proceedings conducted pursuant to subsection (a), (b) or (c) and for reasonable and necessary litigation expense
associated with such proceedings."
These statutes make clear that the Board's budgetary constraints are appropriately considered in relation to compensation and expenses incurred while an appointed attorney is performing professional services for an indigent client. The United States Supreme Court in Ake v. Oklahoma
addressed the balancing of an adequate defense vis-a-vis such monetary constraints:
 "We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to `an adequate opportunity to present their claims fairly within the adversary system.' To implement this principle, we have focused on identifying the `basic tools of an adequate defense or appeal,' and we have required that such tools be provided to those defendants who cannot afford to pay for them."[7]
The 10th Circuit adopted this sentiment, stating in Dunn v. Roberts,
"While the state need not provide the indigent with all the tools the wealthy may buy, it must provide the defendant with the `basic tools of an adequate defense.'"[8]
In Clark v. Ivy the Kansas Supreme Court also recognized that budgetary constraints are a legitimate consideration in providing representation to indigent defendants:
 "The legislature has never given a blank check for payment of such [appointed] attorney fees. Whether under the Board of Supervisors within the judicial branch (prior to 1982) or the present Board within the executive branch, payment of fees was always subject to funds available. . . .
 "Cost containment in the area of state expenditures in providing counsel to indigent defendants in felony criminal cases has been a legislative concern for many years."[9]
The Court then quoted K.S.A. 22-4522 regarding the provision of defense services "in the most efficient and economical manner possible" and the Board's responsibility to establish "standards and guidelines for compensation of appointed counsel and investigative, expert and other services within the limits of appropriations." "Clearly," the Court opined, "the Board is to establish the most cost-effective means in each county or combination of counties of adequately providing legal services for indigents accused of felony charges."[10] Further:
 "The Board is directly responsible to the legislature for the development and operation of such programs and for the expenditure of all state monies allocated for payment of legal services for indigent defendants in felony cases. To fulfill its statutory duties, the Board must have the power to review and monitor claims and reject claims not authorized by the standards and programs established."[11]
Acknowledging the interplay between the appointing court and the Board, the Court concluded:
 We do not believe there is a valid separation of powers issue before us. The executive branch is not infringing herein upon the judicial branch. A judge may appoint any attorney he or she pleases who is capable of adequately representing a defendant providing, of course, the attorney accepts the appointment. There is no infringement on the judicial right or duty of appointment. It is only where compensation for the services of such appointed attorney is expected to be paid from state monies that compliance with the Board's programs, standards, and policies becomes involved. The position of petitioners that review of claims of appointed counsel by the Board and rejection thereof, if not in compliance with the programs, standards, and policies of the Board, is a violation of the separation of powers doctrine is both legally and logically untenable."[12]
In the earlier case of State v. Lee, the Kansas Supreme Court had also acknowledged budgetary constraints in relation to appointed counsel:
 "Our statute, K.S.A. 22-4508, and the regulations thereunder, are quite comparable to the federal provisions contained in 18 U.S.C.A § 3006A(e). Our statute provides in substance that an indigent defendant may make an ex parte application to the court in which the action is pending for needed expert services. The court then holds an ex parte hearing, and if it finds that the services are necessary it shall authorize counsel to obtain them. The court is authorized to determine the reasonable compensation and approve payment. The rules of the state board require the judge to fix a tentative limitation as to the amount of money to be spent for such services. If the amount is in excess of $300, then when claim for payment is submitted the claim is subject to further review and approval by the board of supervisors as to its reasonableness and as to budget limitations. Under these provisions the services of experts and investigators have been repeatedly furnished to indigent defendants, when the trial courts have found such services necessary."[13]
Additionally, in relation to an indigent defendant who wanted a particular psychiatrist appointed for an insanity evaluation, the Kansas Supreme Court said:
 "We hold that the statute [K.S.A. 22-4508] does not make it mandatory upon the trial court to authorized the retention at public expense of any psychiatrist an indigent defendant may select simply because notice of an insanity defense has been given."[14]
Under the showing made in that case, the Court held that the trial court did not abuse its discretion in denying the defendant's motion for an examination by a physician of his choice, at an unknown and unestimated cost, when highly competent psychiatrists were available for the purpose through state facilities.
In conclusion, the determination regarding whether expert services are necessary to an adequate defense is a matter left to the sound discretion of the trial court.[15] However, the amount of money that may be expended for such services from State funds is subject to compliance with the Board's regulations expressing "standards and guidelines for compensation of appointed counsel and investigative, expert and other services within the limits of appropriations."[16] The Board's compliance with its statutory charge regarding efficiency and economy in establishing standards and guidelines for compensation of appointed counsel, investigative, expert or other services does not constitute a decision regarding the handling of cases nor interference with appointed counsel in carrying out their professional duties.
Very truly yours,
 PHILL KLINE Attorney General of Kansas
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] K.S.A. 22-4501 et seq.
[2] K.S.A. 2002 Supp. 22-4522.
[3] Emphasis added.
[4] Emphasis added.
[5] Emphasis added.
[6] Emphasis added.
[7] 470 U.S. 68, 77, 105 S.Ct., 1087, 1093, 84 L.Ed.2d 53, 62 (1985) (citations omitted; emphasis added).
[8] 963 F.2d 308, 312 (10th Cir. 1992) (citations omitted).
[9] 240 Kan. 195, 202 (1986) (emphasis added).
[10] Id. at 203.
[11] Id. at 204.
[12] Id. at 205 (emphasis added).
[13] 221 Kan. 109, 113 (1976) (emphasis added).
[14] State v. Burnett, 222 Kan. 162 (1977).
[15] State v. Owens, 248 Kan. 273 (1978); State v. Mayberry, 248 Kan. 369
(1991); State v. Lumbrera, 252 Kan. 54 (1992).
[16] K.S.A. 2002 Supp. 22-4522(e)(2).